NOT DESIGNATED FOR PUBLICATION

No. 128,621

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ISAAC A. PARRA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE BROWN, judge. Submitted without oral argument. Opinion filed March 13, 2026. Affirmed.

*Mark T. Schoenhofer*, of Wichita, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., MALONE and HILL, JJ.

HILL, J.: One of the surest ways to have your probation revoked is to admit to your sentencing court that you have committed new drug crimes while on probation for committing drug crimes. Here, Isaac A. Parra admitted at a probation revocation hearing that he had committed several new crimes. Some of those new crimes were drug related.

After acknowledging Parra's admissions, the judge summed up the circumstances as he saw them, offering observations of Parra's struggle with drugs, and then revoked his probation. The court sent him to prison to serve his 161-month sentence.

1

Parra appeals that revocation, claiming that some confusing, conflicting comments by the judge show that he has been deprived of due process. Those comments show, in Parra's view, that the district court sent him to prison because it did not understand that it could exercise its discretion and not send him to prison. Indeed, our cases show that a court's failure to exercise discretion simply because it does not understand that it could exercise discretion can be ruled as an abuse of discretion; we will review the leading case shortly. Here, Parra claims such an abuse of discretion and asks us to reverse the district court's revocation order.

We have examined the court's comments and cannot agree with Parra's view of them. When read in context, we conclude that the judge knew what he was doing and sent Parra to prison because he committed those new crimes. This is a valid exercise of the court's discretion. Thus, we affirm.

*A term of probation follows a guilty plea.*

In September 2023, Parra pled guilty to one count of possession of marijuana with the intent to distribute within 1,000 feet of a school, and one count of possession of proceeds derived from violations of drug laws. The court, in November 2023, granted Parra's motion for a dispositional departure and placed him on probation after suspending his 161-month prison sentence.

About a year later, in November 2024, Parra returned to court to answer allegations that he had violated the conditions of his probation by committing new crimes, such as driving while his license was suspended and possession of marijuana and opiates. He waived his right to an evidentiary hearing on those allegations and admitted to the violations. He asked to be returned to probation.

The district court revoked Parra's probation and sent him to prison.

*The rules we must follow here are well established.*

Once a probation violation is proved, a district court has discretion to revoke probation and impose the original sentence unless the court is otherwise limited by statute. We review a district court's decision to revoke an offender's probation for an abuse of discretion. The offender bears the burden of establishing such an abuse of discretion. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022). A district court abuses its discretion when its action is based on an error of law or fact or is arbitrary, fanciful, or unreasonable. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). Interpretation of a sentencing statute is a question of law, and our standard of review of that interpretation is unlimited. See *State v. Moore*, 309 Kan. 825, 828, 441 P.3d 22 (2019).

Because Parra received a dispositional departure sentence—probation instead of prison—we need not concern ourselves with the lack of any intermediate sanctions imposed on Parra. The law permits a district court to revoke probation without imposing a prior intermediate sanction when "the probation . . . was originally granted as the result of a dispositional departure granted by the sentencing court pursuant to K.S.A. 21-6815, and amendments thereto." K.S.A. 22-3716(c)(7)(B). The law also permits a district court to revoke probation without imposing a prior intermediate sanction when "the offender commits a new felony or misdemeanor while the offender is on probation." K.S.A. 22-3716(c)(7)(C). These sections permit a court to revoke probation, but they do not require it.

Parra's argument makes it especially pertinent here to understand the rules on abuse of discretion. "'One way in which a defendant can demonstrate the existence of an abuse of discretion is to show that the district court failed to exercise its discretion, either

because it refused to do so or because it failed to discern that it was being called upon to exercise discretion.'" *Tafolla*, 315 Kan. at 332. In other words, if the district court operated under a mistaken belief that it lacked discretionary authority and automatically revoked probation without considering available alternatives, this could constitute an error of law that amounts to an abuse of discretion. Some comments made by the judge are the basis of Parra's claims on this point.

*Did the court realize that it was not mandatory to send Parra to prison?*

Some context is important here, and we offer extensive quotations of the district court's comments. Parra's counsel argued for reinstatement of Parra's probation so he could return to a residential treatment program. Counsel asked the court to recognize Parra's young age, his children, the length of his underlying sentence, and his struggle with addiction. Parra also spoke on his own behalf. He told the court his opiate use began after he witnessed the death of his younger brother due to the use of fentanyl. After his brother's death, Parra said he acted selfishly and began using drugs and doing what he wanted. Once charged with the probation violations, however, he realized he wanted to change his life for the better.

After hearing these serious arguments and the sobering statements about the lethality of drug use, the court began to explain its decision. The court reminded Parra that he had already received an opportunity to change:

> "Well, you need to be in Narcotics—I mean, we have this discussion before sentencing, you need to be in Narcotics Anonymous meetings, working the 12 steps and have a sponsor that, you know, has got solid 10, 15 years sobriety with the same substances, and call them every week, follow the recommendations, and you need to do it for your kids."

The court expressed concerns for children exposed to parental drug addiction:

> "I mean, what the studies show and what I see happening here in the courtroom, having done this, you know, for coming up on 26 years, with my municipal court 10 years, this gets passed along parent-to-child at a high rate, like not a hundred percent but at a high rate. And it's horrible and traumatic because here you have these kids."

The court noted that a father's drug use carried more severe costs than that of a young person without children to care for:

> "It's one thing if a young person, you know, they make the decision, you know, 'I'm wanting to sow my wild oats,' as we said when we were kids. . . . [T]hen you get caught up in addiction and that's on that person. It's another thing for somebody to be—to grow up wired for addiction to a drug simply because their parent was too selfish to deal with their drug addiction. I mean, fatherlessness, nobody will talk about it, that's the whole reason we have our drug crime rate. Is not having fathers in the homes, not having intact communities. We have all these studies showing who all is incarcerated and what rate, and for some reason they never want to study why are they in there. And it all boils down to, you know, the destruction of families."

The court stated that, though having a father in prison can devastate a family, it was worse for a child to witness a parent in active addiction:

> "And that's horrible, but, as horrible as that is, it's better for a child to grow up without a father than to be around a parent [who's] actively in their addiction, whether the kid sees it or not, it has nothing as traumatic as that would be seeing your parent under the influence. It's some other behavioral thing. It will get past one even if the parent's hiding it. And so you need to be doing this for your kids."

The district court then spoke more directly about Parra's case, noting the severity of Parra's charges and his failure to follow the conditions of his probation:

5

"But, I mean, this is a serious case to begin with, it was presumptive imprisonment, very serious charges, the whole purpose of probation is to get the person on the right path. But, here are the conditions. You know, I ordered you to get into Narcotics Anonymous meetings. I ordered you to complete the treatment program, to give you the guidelines to stay not only sober, but not commit a crime. And it's not just during your probation period, really it is not—a probation is not successful if that individual ever in their lifetime commits a criminal offense again. And the idea is set this person up for success for the rest of their life. But then, yet, you know, we have new offenses and two different steps of new offenses."

The court distinguished between someone who engages with treatment but struggles with drug use during probation and someone who commits serious crimes during probation. The court noted that Parra admitted not only to drug use during his probation, but also to possession of drugs with the intent to distribute.

"And I mean, I can work with somebody who's—seriously, I will work as long as I can with people who they're just coming up hot, but, you know—with a UA, but they're engaged in reporting and they're engaged in their treatment program and it's just they're struggling, I will work with them as long as the day is, but, it's when people, you know, are not engaging, and when we have new offenses it just—there's no—there's no options available to the judge, and these are serious offenses for new possession with the intent to distribute, which is—I mean, it's one thing if a person's just struggling with their own addiction, but they're actually promoting it in their own community, it's destructive."

The district court concluded these remarks by announcing its decision:

"You certainly deserve better, and I'm not giving up on you, but the way out is getting into Narcotics Anonymous meetings and work the 12 steps, but I cannot continue the probation so I'll go ahead and revoke and impose the 161 months."

We do not read this comment to be an expression of a lack of knowledge of its authority to return Parra to probation. This is simply a statement of what is going to happen to Parra.

There is no question about the use of intermediate sanctions in this case. The probation violation journal entry states that Parra's probation was revoked under K.S.A. 22-3716(c)(7) because Parra committed new crimes and because his original sentence resulted from a dispositional departure. See K.S.A. 22-3716(c)(7)(B) (probation originally granted by dispositional departure); K.S.A. 22-3716(c)(7)(C) (commission of new crime).

*Parra focuses on two aspects of the court's comments.*

Parra argues the district court abused its discretion by imposing an unreasonable sentence premised on an error of law. He asserts that when the district court told Parra, "I am not giving up on you," it signaled to Parra that the court had an intent to give Parra another chance on probation. Parra argues it was "an entirely inconsistent line of reasoning" or, at the least, "wide open to serious misapprehensions" when the court then said, "[B]ut I cannot continue the probation so I'll go ahead and revoke and impose the 161 months."

Parra argues that, by saying it "cannot continue the probation," the district court expressed a mistaken belief *that it had no option* but to revoke Parra's probation. He argues the mistaken belief is further evidenced by the district court's statement that "there's no options available to the judge," which was made in the following context:

> "I will work as long as I can with people who they're just coming up hot, but, you
> know—with a UA, but they're engaged in reporting and they're engaged in their treatment
> program and it's just they're struggling, I will work with them as long as the day is, but,

7

it's when people, you know, are not engaging, and when we have new offenses it just—*there's no—there's no options available to the judge*, and these are serious offenses for new possession with the intent to distribute, which is—I mean, it's one thing if a person's just struggling with their own addiction, but they're actually promoting it in their own community, it's destructive." (Emphasis added.)

Parra argues the district court denied him due process by failing to abide by the statute governing probation violation sanctions and that his sentence was both unreasonable and premised on an error of law. He requests that we reverse the district court's decision and remand the case for resentencing.

*These remarks, considered in context, do not persuade us that the court was ignorant of its discretionary authority.*

The record shows that the district court understood its discretionary authority about the disposition of Parra's probation. The district court told Parra that if he were found in violation of his probation conditions, the court had multiple options as to the disposition of his case, including to "leave you on probation as is, no sanctions, no changes"; impose a sanction but "ultimately leave you on"; or "revoke and impose the underlying 161 months of incarceration."

That recitation seems accurate to us. The district court appears to have been talking directly about the potential disposition of Parra's case here—it refers to Parra as "you" and refers to the length of Parra's underlying sentence. The court then asked Parra if he had any questions about "what could happen on this," referring again to Parra's case. This demonstrates the district court understood its discretionary powers.

When talking about the disposition of the case, the district court explained the "presumptive imprisonment" brought on by the "very serious charges" Parra committed in the underlying case. It also explained that "the whole purpose of probation is to get the

person on the right path" and recalled that it ordered Parra to get into Narcotics Anonymous meetings and to complete the treatment program to help him stay sober and away from crime. "But then, yet," the court went on, "we have new offenses and two different steps of new offenses." After the court said there were "no options available" when people failed to engage in treatment and committed criminal offenses while on probation, it also explained that one of Parra's offenses—possession with intent to distribute—was particularly bad:

> "[I]t's one thing if a person's just struggling with their own addition, but [when] they're actually promoting in their own community, it's destructive."

If the district court believed that it was required to revoke Parra's probation because Parra committed a new crime, it does not make sense for the court to go into such detail about the nature of Parra's crimes or his failure to engage with treatment opportunities. Parra's failure to engage with treatment and the severity of his crimes would not make a difference if revocation was the only option available to the court; these are factors relevant to a discretionary decision.

When the district court said that it was "not giving up," it explained to Parra, "You certainly deserve better, and I am not giving up on you, but the way out is getting into Narcotics Anonymous meetings and work the 12 steps, but I cannot continue the probation." Parra argues that by making this statement, the district court expressed unequivocal intent to give him another chance on probation. But considering the rest of the district court's comments, a more reasonable view is that the district court was advising Parra of the best option for long-term recovery, while also explaining that Parra had committed crimes too severe to justify leaving him on probation and out in the community.

We are not convinced by Parra's arguments. This record shows straight talk from a judge to a man that he is going to send to prison. Those comments display the many factors a judge must weigh when deciding such matters and do not display any confusion or doubt about the court's discretion. There is no abuse of discretion here.

Affirmed.